UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| BRIAN NEWMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | CAUSE NO. 3:15-CV-247-PPS-JEM |
| CAROLYN COLVIN, Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Brian Newman appeals the Social Security Administration's decision to deny his application for disability insurance benefits and supplemental security income. An administrative law judge found that Newman was not disabled within the meaning of the Social Security Act. Newman raises a number of challenges to this determination including that the ALJ erred by not affording controlling weight to Newman's treating physician. Because I agree that the ALJ improperly weighed the medical evidence, I will reverse the ALJ's decision and remand on this issue.

### Background

Newman was 41 years old at the time of his hearing. [DE 12 at 41.][1] He was 5'8" and weighed 207 pounds, and he was living with his wife and two children at the time. [*Id.* at 41, 60.] He and his family were on food stamps and his children were on

---

[1] The administrative record is found in the court record at docket entry 12, and consists of 667 pages. I will cite to its pages according to the Court's Electronic Case Filing page number, rather than by the Social Security Administration's Bates stamp numbers, which don't begin until page 6 of 667 as the pages are enumerated in ECF.

Medicaid. [*Id*. at 42, 53]. He testified that he does not drive due to poor reflexes that have caused him to get into accidents in the past. [*Id*. at 42-43.] He also testified that he completed the 12th grade and was currently taking college classes through Ivy Tech; most of the classes were online. [*Id*. at 43.] At the time of the hearing, Newman had completed between six and nine credit hours, had taken a computer class and an introduction to business class, was currently taking an algebra class, and started an online accounting class but withdrew because he was having problems with that class. [*Id.* at 43-44.]

Newman wants to work. About a week before the hearing, he began working at McDonald's as a cook. [DE 12 at 65-66.] And, in fact, he has a substantial, albeit largely unsuccessful, work history. Over the years he has worked as a welding machine tender, a mobile home assembler, a car assembler, and a retail stocker and cashier. [DE 12 at 28.] Newman testified that during his recent approximately six months of employment with Walmart, he had to switch from a stocking job to a cashier job because he was having trouble keeping up due to the "Multiple Sclerosis (MS) in my hands." [*Id.* at 51-52.] He quit the Walmart job to find something closer to home, and he later found work at a Dollar General. Newman worked as a stocker and cashier for Dollar General but because he could not keep up with the pace of the work, his "hours were cut significantly" and with so few hours it was hard to provide for his family. [*Id*.

at 52-53.] So he left and took a job at McDonald's. It is therefore plain from the record that Newman wants to work. The issue is whether he is able to.

Newman filed an application for disability insurance benefits and for supplemental security income alleging that the disability onset date was the day before he filed the application. [DE 12 at 15.] A video hearing was eventually held before an ALJ, who later denied benefits in a written opinion. [DE 12 at 12-33].

Newman has a number of medical problems that he suffers from. At the hearing, Newman testified along with a vocational expert. Newman testified that he has MS and that the MS causes tightness and numbness in his hands and fingers, which prevents him from doing any type of industrial work because he can only go so fast with his hands. [DE 12 at 54.] He said that the tightness in his hands is constant—it doesn't get better or worse—and that he has taken medications that prevent the tightness from getting worse. [*Id.* at 55.] He testified that he has trouble lifting heavy objects, such as cases holding several containers of liquid detergents, but is able to lift a gallon of milk and maybe something a little heavier if he is careful. [*Id.* at 56-57, 63.] Newman said that after a three-hour shift at McDonald's, his hands are very tight and his productivity slows the longer the shift lasts. [*Id.* at 69.]

Newman testified that he also has a knee injury, specifically a meniscal tear and ACL reconstruction, which causes him to collapse on occasion and have difficulties walking and standing for long periods of time. [*Id.* at 54, 57-62, 64.] He said that

3

sometimes he has trouble standing for long periods of time because of the MS and experiences weakness in the legs when walking. [*Id.* at 62.] He does not use a cane or a walker. [*Id.* at 65.]

Newman also suffers from a form of autism known as Asperger syndrome which makes social interaction difficult for those afflicted. Newman also is bipolar, for which he takes medication. [*Id*. at 54-55, 61.] He explained that being bipolar causes him to catch on slower than the average person when learning a job and that he has problems accepting criticism for things he does incorrectly at work. [*Id*. at 55.] He also testified that he tends to withdraw and sometimes be non-productive. [*Id.*] Newman said that while he has had issues with depression and even contemplated suicide, he was not currently having any problems. [*Id.* at 72.]

The ALJ found that Newman met the insured status requirements of the Social Security Act and that he has not engaged in substantial gainful activity since September 26, 2011, the alleged onset date. [*Id*. at 17.] At Step Two, the ALJ concluded that Newman has the following severe impairments: lumbar and cervical radiculopathy, multiple sclerosis, Asperger's disorder/pervasive developmental disorder, anxiety disorder, and major depressive disorder. [*Id*. at 18.] At Step Three, the ALJ determined that Newman's impairments do not meet or medically equal the severity of one of the listed impairments. [*Id*.]

At Step Four, the ALJ found that Newman has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). Here is Newman's RFC as determined by the ALJ:

> He can occasionally crouch, crawl and climb ramps or stairs, as well as frequently kneel, balance, bend and stoop, beyond what is required to sit. He cannot climb ladders, ropes or scaffolds. ***The claimant can frequently***, but not constantly, use his hands for fine and gross manipulation. He is limited to simple, routine and repetitive tasks and can maintain the concentration necessary to perform simple tasks and simple work-like procedures. He is limited to superficial interaction with coworkers, involving prolonged conversation. Contact with supervisors can involve necessary instructions. He is also limited to low stress work, defined as only occasional decision making and only occasional changes in the work setting. He can tolerate predictable changes in the work environment. The claimant can meet the production requirement in an environment that allows him to sustain a flexible and goal-oriented pace, but cannot perform fast-paced work such as assembly line production work, with rigid or strict production requirements.

[*Id.* at 20-21 (emphasis added).]

In the above RFC, I have highlighted the phrase that Newman can "frequently" use his hands for fine manipulation because it is critical to this case. This is because the vocational expert testified that given Newman's assigned RFC, there are jobs that exist in significant numbers in the national economy that Newman can perform. [*Id.* at 27-28.] But if Newman was limited to less than occasional fine fingering and gross manipulation, then the vocational expert "would eliminate all jobs." [*Id.* at 80.] Newman's treating neurologist, Dr. Vidic,

5

believed that Newman was far more limited in his hand manipulation ability than the ALJ believed him to be. But the ALJ rejected Dr. Vidic's opinion in this regard. So the issue is whether the RFC assigned by the ALJ relating to Newman's ability to "frequently" use his hands is supported by substantial evidence.

## **DISCUSSION**

In evaluating Newman's arguments as to how the ALJ erred, I must keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Newman argues that the ALJ improperly discounted Newman's treating neurologist's opinion because the ALJ did not offer good reasons for rejecting Newman's manipulative limitations and did not consider all of the factors for giving weight to a treating physician's opinion. [DE 21 at 15-18.] I agree that the ALJ's decision to discount Newman's treating physician's opinion was not supported by substantial evidence. A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20

6

C.F.R. § 404.1527(c)(2); *see also White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). "This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport while controlling for the biases that a treating physician may develop such as friendship with the patient." *Oakes v. Astrue*, 258 Fed. App'x 38, 43-44 (7th Cir. 2001) (internal citation omitted); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Once well-supported contradicting evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight and becomes "just one more piece of evidence for the administrative law judge to weigh." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). If an ALJ decides not to give controlling weight to a treating physician's opinion, however, he must explain her reasons for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Failure to do so is cause for remand. *Id.* And that's where the ALJ's opinion here gets into trouble.

The ALJ gave the opinion of Newman's treating physician at the Elkhart Clinic Department of Neurology—Dr. Vidic—"some weight," but he did not give it controlling weight. [DE 12 at 26.] The record contains Dr. Vidic's July 2013 Residual Functional Capacity Questionnaire dated July 10, 2013 as well as supporting treatment records from January 2010 to February 2013. [*Id.* at 583-611.] While the ALJ found that parts of Dr. Vidic's opinion were consistent with the longitudinal evidence, he concluded that "Dr. Vidic goes too far in reducing the claimant to fine manipulating, grasping, turning and twisting objects for only 35% of the work period and reaching for

7

only 10% of the work period." [*Id.* at 26.] The ALJ found that "[a]t worst, the claimant has only 'some difficulty' with fine manipulation and there is little objective evidence supporting less than frequent gross manipulation." [*Id.*]

Even though the ALJ didn't flat out ignore Dr. Vidic's opinion, he gave it a pretty cursory treatment and then, problematically, failed to adequately explain why he was accepting or discounting various parts of Dr. Vidic's opinion. And, more importantly, the ALJ seems to have ignored record evidence corroborating Dr. Vidic's opinion about Newman's manipulative limitations. For example, the Nerve Conduction-EMG Study Report that Dr. Vidic interpreted showed that Newman's left triceps potentially were not getting proper nerve stimulation. [*Id.* at 608.] Dr. Vidic also performed a Bilateral Upper Extremity Somatosensory Evoked Potential Report explaining that it was "a bilateral abnormal study suggestive of bilateral proximal abnormality. Localization is not possible due to the fact that the last normal waveform was Erb's point. Therefore, this could be anywhere either in the cervical spine or cortex." [*Id.* at 607.] The ALJ makes no mention of these exams.

Dr. Vidic's opinion about Newman's manipulative limitations also is consistent with the observations of Dr. Naeem, another treating physician at the Elkhart Clinic Department of Neurology, whose notes Dr. Vidic reviewed while preparing his Residual Functional Capacity Questionnaire. [*Id.* at 584.] On September 2010, November 2010, July 2011, Dr. Naeem observed that Newman "[h]as some give away weakness in his b/l upper extremity mainly hand grip." [DE 12 at 381, 386, 389.] In

8

November 2010 and July 2011, Dr. Naeem observed that Newman "[s]till has mild bilatera[sic] hand grip weakness (old)." [*Id.* at 381, 386.] In October 2011, Newman saw Dr. Vidic for a neurology follow up and complained that "[t]he more he uses his hands, the more they bother him. hard[sic] to hold on to things." [*Id.* at 397.] Dr. Vidic observed during this examination that Newman was in "moderate distress," "distal hand weakness," and "diminished temperature right upper extremity to mid forarm[sic] diminished temperature right upper extremity." [*Id.* at 398-399.] The ALJ makes no mention of Dr. Naeem's observations or these portions of Dr. Vidic's observations during Newman's neurology follow up.

Dr. Vidic's opinion also is consistent with certain findings of Dr. Coulter, a consultative physical examiner, who noted, upon examining Newman, that: "Grip strength decreased. Effectively able to perform gross movements. Some difficulty performing fine movements with his hands. Not atrophy present. Muscle strength and tone 5/5 except in his hands with[sic] is 4/5." [DE 428.] Dr. Coulter also noted that Newman's "primary disability is chronic pain and weakness in his hands, chronic fatigue and Asperger's syndrome" and that he "may have difficult with tasks that require fine hand movements, gripping, grasping, pinching. He may have problems with prolonged exertional tasks." [*Id.*] The ALJ seemed only to latch on to Dr. Coulter's opinion that Newman only has *some difficulty* performing fine movements with hands, noting the 4/5 grip strength, but inexplicably finding that was insufficient to support Dr. Vidic's opinion regarding Newman's manipulative limitations. [DE 12 at 26.]

9

In summary, the ALJ neglected to discuss Newman's test results, several aspects of Dr. Vidic's neurologic exam notes, Dr. Naeem's observations, and appears to have impermissibly cherry picked certain aspects of Dr. Coulter's opinion to support his conclusion that Newman "has only 'some difficulty'" performing fine movements with hands and that Newman "does not have documented reduced strength in his upper extremities (besides 4/5 grip strength), reduced reflexes or impaired range of motion." [DE 12 at 26.] The ALJ's reliance on certain evidence that supports his decision while failing to address, and potentially failing to even consider, contrary evidence strikes me a classic case of "cherry-picking" that the Seventh Circuit has denounced time and time again. *Scott*, 647 F.3d at 740; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

Furthermore, if an ALJ does not give a treating physician's opinion controlling weight, he is required to consider several factors including the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinions. 20 C.F.R. § 404.1527(c)(2). While the ALJ acknowledged that Dr. Vidic is Newman's treating neurologist, and in a different portion if his opinion noted that Newman went a full year without seeing Dr. Vidic, he does not discuss any of these required factors when explaining his decision only to give Dr. Vidic's opinion "some weight." [DE 12 at 26.] The ALJ's failure to analyze this required checklist of factors is fatal to his partial rejection of Dr. Vidic's opinion. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

In sum, I am unclear as to why the ALJ rejected the portion of Dr. Vidic's opinion regarding manipulative limitations especially in light of the apparent longitudinal evidence supporting that opinion. The Seventh Circuit has "repeatedly stated that the ALJ's decision must be based upon consideration of all the relevant evidence, and that the ALJ must articulate at some minimal level his analysis of the evidence." *Id.* The ALJ failed to do so here. And, as noted above, this failure is potentially significant because when the ALJ asked the vocational expert to consider a person "limited to less than occasional reaching and less than occasional fine fingering and gross manipulation with the hands—and that would come from the, a portion of Dr. [Vidic's] July '13 statement," the vocational expert said that these limitations, when combined with previously mentioned social and physical limitations, would "eliminate all jobs." [DE 12 at 79-80.] So to be clear, if the ALJ gave Dr. Vidic's opinion controlling weight, he likely would have found that Newman is disabled.

For these reasons, a remand is necessary to permit the agency to further assess the evidence and develop the record regarding Newman's manipulative limitations. Because these grounds already require remand, I will not address Newman's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

11

**SO ORDERED**.

ENTERED: September 29, 2016

                                                       s/ Philip P. Simon
                                          **PHILIP P. SIMON, CHIEF JUDGE**
                                          **UNITED STATES DISTRICT COURT**